**THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH**

IN THE MATTER OF THE )
SEARCH OF: )
Item listed in Attachment A                2:24-mj-00740 DBP

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Shenen P. Rose, a Special Agent with Homeland Security Investigations, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent with Homeland Security Investigations (HSI), Office of the Assistant Special Agent-in-Charge in Salt Lake City, Utah. I have been employed as a Special Agent with HSI beginning in 2020 and I am currently assigned to investigate violations of federal law relating to child exploitation.  Prior to employment HSI, I was employed in Federal Law Enforcement for twelve years, working as a Deportation Officer and Border Patrol Agent. While employed as a Deportation Officer, I was assigned as a Task Force Officer (TFO) with HSI and participated in child exploitation investigations and executed search warrants that resulted in the seizure of Child Sexual Abuse Material (CSAM).  My education includes a Master of Science in Criminal Justice from Grand Canyon University and a Bachelor of Science in Criminal Justice from Utah Valley University.  I have received training in the area of child pornography, child exploitation, and child sexual abuse and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. While employed by HSI, I have investigated Federal criminal violations related to child exploitation and child pornography, and the use of technology related to these types of criminal activity. Specifically, I have participated in numerous investigations relating to the sexual exploitation of children over the Internet.

2.     Moreover, I am a Federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2252, and 2252A, and is authorized by law to request a search warrant.

3.     This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant of a cellphone (hereafter the "DEVICE") specifically described in **Attachment A** of this Affidavit, including the content of electronic storage located therein; and the content of any storage device therein, for contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § § 2252, and 2252A which items are more specifically described in **Attachment B** of this Affidavit.

4.     The statements in this affidavit are based in part on information provided by other law enforcement officers and on my investigation of this matter. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(1) and (b)(1) (transportation of a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. § 2252(a)(2) and (b)(1) (receipt or distribution of a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (possession of and access with intent to view a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. § 2252A(a)(1) and (b)(1) (transportation of child pornography); 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (receipt or distribution of child pornography);; and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (possession of and access with intent to view child pornography) (the "SUBJECT OFFENSES")  are presently located on the DEVICE.

## BRIEF SUMMARY

5.      As set forth in detail below, Utah resident Mitchell Conner Moore returned to the
United States from an international cruise on June 20, 2024, through the Port of Entry in Miami,
Florida.  A border search was attempted on his cellular telephone (the DEVICE) at the Port of
Entry, but the DEVICE was password protected.  It was therefore sent to HSI in Salt Lake City
to complete the border search using forensic tools.  Child pornography was found.  At this point
the border search was halted.  Based on the above, there is probable cause to believe that fruits,
evidence, and instrumentalities of the SUBJECT OFFENSES will be found on the DEVICE.

## STATUTORY AUTHORITY

6.      As noted above, this investigation concerns alleged violations of the following:

a.      18 U.S.C. § 2252(a)(1) and (b)(1) prohibit any person from knowingly
transporting or shipping, or attempting or conspiring to transport or ship, any visual
depiction using any means or facility of interstate or foreign commerce, or in or affecting
interstate or foreign commerce, by any means, including by computer or mail, if the
production of such visual depiction involved the use of a minor engaging in sexually
explicit conduct and such visual depiction are of such conduct.

b.      18 U.S.C. § 2252(a)(2) and (b)(1) prohibit any person from knowingly
receiving or distributing, or attempting or conspiring to receive or distribute, any visual
depiction using any means or facility of interstate or foreign commerce, or that has been
mailed or shipped or transported in or affecting interstate or foreign commerce, or which
contains materials which have been mailed or so shipped or transported, by any means
including by computer, or knowingly reproducing any visual depiction for distribution

using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce or through the mail if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

c.      18 U.S.C. § 2252(a)(4)(B) and (b)(2) prohibit any person from knowingly possessing or accessing with the intent to view, or attempting or conspiring to possess or access with the intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

d.      18 U.S.C. § 2252A(a)(1) and (b)(1) prohibit a person from knowingly mailing, or transporting or shipping using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography, as defined in 18 U.S.C. § 2256(8), or attempting or conspiring to do so.

e.      18 U.S.C. § 2252A(a)(2)(A) and (b)(1) prohibit a person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any

means, including by computer.

f.      18 U.S.C. § 2252A(a)(5)(B) and (b)(2) prohibit a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

7.      The following definitions apply to this affidavit and Attachment B:

a.      "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b.      "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

c.      "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction

involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

  d. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 U.S.C. § 1030(e)(1).

  e. "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

  f. "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or

other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

g.      "Geolocated," as used herein, refers to the identification of the geographical location of (a person or device) by means of digital information processed via the Internet.

h.      "Hashtag," as used herein, refers to a word or phrase preceded by a hash or pound sign (#), which is used to identify messages or groups on a specific topic.

i.      A "hash value" is a unique multi-character number that is associated with a computer file. Some computer scientists compare a hash value to an electronic fingerprint in that each file has a unique hash value. Any identical copy of the file will have exactly the same hash value as the original, but any alteration of the file, including even a change of one or two pixels, would result in a different hash value. Hash values represent large amounts of data as much smaller numeric values, so they are used with digital signatures.

j.      "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other

communications equipment.

k.      An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. Most Internet Service Providers ("ISPs") control a range of IP addresses. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

l.      The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

m.      "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

n.      "Mobile application" or "chat application," as used herein, are small, specialized programs downloaded onto mobile devices, computers and other digital devices that enable users to perform a variety of functions, including engaging in online chat and sending or receiving images and videos.

o.      "Records," "documents," and "materials," as used herein, include all

information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

  p. "Remote computing service," as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

  q. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

  r. A "storage medium" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

  s. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## PROBABLE CAUSE

8. In or around June, 2024, Utah resident Mitchell Conner Moore ("MOORE") went on an international cruise, including a stop in Mexico.  MOORE's cruise ship left Mexico on or about June 18, 2024, and arrived in Miami, Florida, on or about June 20, 2024.   When MOORE

arrived at the Port of Entry in Miami, he was sent to secondary inspection by United States

Customs and Border Protection (CBP).

9.      During the secondary inspection, CBP attempted to conduct a manual review

MOORE's cellphone, a iPhone 12 Pro Max, serial # G6TDP2MZ0D43, (the DEVICE), pursuant

to Border Search Authority.  However, the DEVICE was password protected and the manual

review could not be conducted at the Port of Entry.  Therefore, CBP detained the DEVICE and

turned it over to HSI Miami so the border search could be conducted with the aid of computer

forensics.

10.     Because MOORE was a resident of Utah and would be returning to Utah, HSI in

Miami sent the DEVICE to the HSI forensic lab in Salt Lake City, Utah.

11.     The DEVICE arrived at HSI in Utah after I had left for the day on June 26, 2024.

The next day, on June 27, 2024, I accepted custody of the DEVICE and turned it over to SA

Cody Tracy, who is a Computer Forensic Agent assigned to HSI Salt Lake City.

12.     That same day, SA Tracy began the forensic process of imaging the DEVICE and

processing it.  SA Tracy worked on the DEVICE between June 27-July 1, 2024.  On July 1,

2024, SA Tracy began reviewing the images extracted from the device.  He immediately

observed multiple images which appeared to depict sexually explicit images involving

prepubescent children. SA Tracy created as screen capture of the images he had found,

immediately notified me, and stopped searching.

13.     I reviewed the screen capture of the images taken by SA Tracy.  Approximately

20 images appeared to depict the sexual abuse of minors.  For example, one of the images was

titled **"(pthc) NEW 2016 Pedo Childlover 8yo Daddy's Little Girl Pics JM 05_compressed.jpg."**

Based on my training and experience, the term "pthc" stands for "pre-teen hard core." This image file depicts what appears to be a prepubescent girl, approximately 8-10 years old. She is kneeling in front of an adult male, who has his shorts pulled aside to expose his penis. The girl has a white substance resembling semen on her face. This same white substance is also visible on the tip of the adult male's penis.

14.     Based on my training and experience, consultation with other law enforcement officers, I know that child pornography can be difficult to find or obtain. Because of the illegal nature of these images, they are not often accessible in ways that other internet content is made available and is not readily found using search engines like Google. Therefore, based on training and experience, many people who use child pornography use the internet to correspond with others to find links to places where child pornography is hosted or to directly share illegal content between users. Therefore, records or correspondence such as email and text messages, including messages sent through apps, is likely to be relevant in showing how the suspect accessed child pornography on the DEVICE as well as to provide evidence into whether the suspect was actively involved in the distribution of illegal content.

15.     I know that people who use child pornography will often create a variety of accounts or use a variety of services from which they access their child pornography. Often this is done in an effort to obscure their identify from law enforcement. Obtaining information regarding all accounts and/or services, including internet services and cellular services, used by the user of the device is necessary to show the breadth of illegal activity and to prove the identity of the user by eliminating innocent explanations.

16.     I also know that people who use child pornography often obtain or distribute child pornography though programs or apps that allow the transfer from one user to another, often

called peer-to-peer networks.  These programs or apps that have been developed specifically to facilitate file transfers or the ability to transfer files between users can simply be a feature in an app intended for another purpose.  Evidence of peer-to-peer or other file transferring apps or programs will provide insight into how the suspect received child pornography and whether he also distributed child pornography.

17.     Further, I know that suspects in these criminal cases sometimes claim that the DEVICE was not in their possession during the time child pornography was accessed.  Collateral clues that can be discovered through observing what other activity was taking place on the device at or around the time the child pornography was accessed is critical in showing the identity of the person who accessed the child pornography.  Correspondence such as emails or text messages at or around the time that the child pornography was being accessed is therefore relevant to show that the suspect was the person who controlled the child pornography.

18.     Based on the facts and opinions detailed in this affidavit, specifically the information found in the forensic exam conducted under Border Search Authority, I believe that there are visual depictions of child sexual exploitative material contained in the DEVICE.

## BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, AND THE INTERNET

19.     I have had both training and experience in the investigation of computer-related crimes. Based on my training, experience, and knowledge, I know the following:

a.   Computers and digital technology are the primary way in which individuals interested in child pornography interact with each other. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

b.   Digital cameras and smartphones with cameras save photographs or

videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer, using a cable or via wireless connections such as "WiFi" or "Bluetooth." Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone. These memory cards are often large enough to store thousands of high-resolution photographs or videos.

      c.   A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Mobile devices such as smartphones and tablet computers may also connect to other computers via wireless connections. Electronic contact can be made to literally millions of computers around the world. Child pornography can therefore be easily, inexpensively and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone.

      d.   The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. Electronic storage media of various types - to include computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices that are plugged into a port on the computer - can store thousands of images or videos at very high resolution. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile phones are also often carried on an individual's person.

      e.   The Internet affords individuals several different venues for obtaining,

viewing, and trading child pornography in a relatively secure and anonymous fashion.

f.   Individuals also use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with a remote computing service that may provide email services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone, or external media in most cases.

g.   A growing phenomenon related to smartphones and other mobile computing devices is the use of mobile applications, also referred to as "apps." Apps consist of software downloaded onto mobile devices that enable users to perform a variety of tasks – such as engaging in online chat, sharing digital files, reading a book, or playing a game – on a mobile device. Individuals commonly use such apps to receive, store, distribute, and advertise child pornography, to interact directly with other likeminded offenders or with potential minor victims, and to access cloud-storage services where child pornography may be stored.

h.   As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional (*i.e.*, by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files) or unintentional. Digital information, such as the traces of the path of an electronic communication, may also be automatically stored in many places (*e.g.*, temporary files or

ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

20.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the DEVICE, in whatever form they are found. One form in which the records are likely to be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

21.     I submit that there is probable cause to believe those records referenced above will be stored on the DEVICE, for at least the following reasons:

a.   Deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

b.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.

This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

c.   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

22.   As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that there is forensic electronic evidence stored on the DEVICE because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, email programs, and chat

programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

    b.  Information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (*e.g.*, registry information, communications, images and movies, transactional information, records of session times and durations, Internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, computers typically contain information that logs: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the Internet. Such

information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (*e.g.*, a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (*e.g.*, Internet searches indicating criminal planning), or consciousness of guilt (*e.g.*, running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.   A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the

records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.   I know that when an individual uses a computer to obtain or access child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

23.   Based upon my training and experience and information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices, including external and internal

hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming

systems, SIM cards, cellular phones capable of storage, floppy disks, compact disks,

magnetic tapes, memory cards, memory chips, and online or offsite storage servers

maintained by corporations, including but not limited to "cloud" storage. I also know

that during the search of the premises it is not always possible to search computer

equipment and storage devices for data for a number of reasons, including the following:

a. Searching computer systems is a highly technical process that requires

specific expertise and specialized equipment. There are so many types of computer

hardware and software in use today that it is impossible to bring to the search site all of

the technical manuals and specialized equipment necessary to conduct a thorough search.

In addition, it may also be necessary to consult with computer personnel who have

specific expertise in the type of computer, software, or operating system that is being

searched;

b.    Searching computer systems requires the use of precise, scientific

procedures which are designed to maintain the integrity of the evidence and to recover

"hidden," erased, compressed, encrypted, or password-protected data. Computer

hardware and storage devices may contain "booby traps" that destroy or alter data if

certain procedures are not scrupulously followed. Since computer data is particularly

vulnerable to inadvertent or intentional modification or destruction, a controlled

environment, such as a law enforcement laboratory, is essential to conducting a complete

and accurate analysis of the equipment and storage devices from which the data will be

extracted;

c.    The volume of data stored on many computer systems and storage devices

will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

       d.     Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

24.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant. These searches are conducted with the aid of software and techniques which are continually evolving. As such,

as investigators uncover new techniques to search a device and as software is updated, future searches are likely to uncover additional evidence. As such, it is requested this warrant will allow for repeated forensic review up to and including the time of trial.

## CONCLUSION

25.     Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits and instrumentalities of the SUBJECT OFFENSES, more fully described in Attachment B, are located on the DEVICE described in Attachment A.  I respectfully request that this Court issue a search warrant for the DEVICE described in Attachment A, authorizing the seizure and search of the items described in Attachment B. It is intended this warrant will allow for off-site forensic review up to and including the time of trial.

26.     I am aware that the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab, digital evidence will also undergo a similar process. For this reason, the "return" inventory will contain a list of only the tangible items recovered from the premises. Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

                                                    */s/ Shenen Rose*

                                                Shenen P. Rose
                                                 Special Agent
                                                Homeland Security Investigations

Sworn and subscribed before me this 23rd day of July, 2024.

United States Magistrate Judge

**ATTACHMENT A**

**DESCRIPTION OF DEVICE TO BE SEARCHED**

The item to be searched (the DEVICE) is a BLACK IPHONE 12 PRO MAX, SERIAL #: G6TDP2MZ0D43, seized on or about June 20, 2024, from Mitchell Conner Moore and currently stored in evidence at the Homeland Security Investigations office 2975 Decker Lake Drive, West Valley City, UT 84119.

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

The following materials, which constitute fruits, evidence, and instrumentalities of 18 U.S.C. § 2252(a)(1) and (b)(1) (transportation of a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. § 2252(a)(2) and (b)(1) (receipt or distribution of a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (possession of and access with intent to view a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. § 2252A(a)(1) and (b)(1) (transportation of child pornography); 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (receipt or distribution of child pornography);; and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (possession of and access with intent to view child pornography) (the SUBJECT OFFENSES) are to be seized from the DEVICE described in Attachment A:

1.     The DEVICE itself, including any storage media/sim card, etc,, contained inside the DEVICE, if it was used as a means to commit the violations described above.

2.     For the DEVICE (hereinafter, "DEVICE"):

    a.     evidence of who used, owned, or controlled the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user names and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.     evidence of software that would allow others to control the DEVICE, such as viruses, Trojan horses, and other forms of malicious software, as well

as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

e.  evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

f.  evidence of the attachment to the DEVICE of other storage devices or similar containers for electronic evidence;

g.  evidence of programs (and associated data) that are designed to eliminate data from the DEVICE;

h.  evidence of the times the DEVICE was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the DEVICE;

j.  documentation and manuals that may be necessary to access the DEVICE or to conduct a forensic examination of the DEVICE;

k.   records of or information about Internet Protocol addresses used by the DEVICE;

l.  records of or information about the DEVICE's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m.      contextual information necessary to understand the evidence described in this attachment.

3.      Child pornography, as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), and child erotica.

4.      Evidence that identifies the creator, user, individuals, or correspondents engaged in the production, sharing, receipt, collection, or possession of child pornography, or that identifies the means or methods used regarding such or other violations of the crime under investigation;

5.      All "address books" or other lists of correspondents relevant to the crime under investigation;

6.      All saved "chat" or messaging transcripts that reflect an interest in sexual exploitation of minors and/or otherwise relevant to the crime under investigation;

7.       Any and all records, documents, visual depictions, and materials pertaining to child pornography, child erotica, an interest in such materials, or pertaining to a sexual interest in children, or sexual activity involving children;

8.      Any and all information, notes, software, documents, records, or correspondence, in any form and medium pertaining to any minor who is, or appears to be, the subject of any visual depiction of child pornography, child erotica, sexual activity with other minors or adults, or of sexual interest, or that may be helpful in identifying any such minors;

9.      Images, correspondence, and other records that help identify the user of DEVICE listed in the Attachment A;

10.     Content of web history and searches that reflect interest in sexual activity with children and the crime under investigation;

11.     Content of web history and search that reflect a sexual interest in or the sexual exploitation of minors or that help identify persons possessing, receiving, distributing or producing child pornography or the crime under investigation;

12.     Location information associated with DEVICE listed in Attachment A that is relevant to the crime under investigation that helps identify the user of the account or events relating to the crime to determine the chronological and geographic context of account access, use, and events relating to the crime and to the accounts listed in Attachment A, owner and the owner's contacts that are evidence of the crime under investigation;

13.     Location information associated with DEVICE listed in Attachment A that may help identify suspects, the account user, or show where events occurred, and who sent, received, possessed or produced child pornography or other evidence of the crime under investigation;

14.     Information about the device listed in Attachment A that is evidence of or identifies persons involved in the crime under investigation;

15.     Information about the device used to access the accounts listed in Attachment that is evidence of or identifies persons possessing, receiving, distributing or producing child pornography or other violations of Title 18, United States Code, Sections 2251(a), 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5),

16.      EXIF or other metadata about images, documents or correspondence reflecting a sexual interest in children, or that help identify the device or person who produced, sent, traded, received, or possessed child pornography or that identifies the user of the accounts used to engage in child exploitative acts.

17.     EXIF or other metadata about images, documents or correspondence reflecting an

interest in the sexual exploitation of minors or that help identify the device or person using the account or that otherwise is evidence of the crime under investigation;

18.     Information about the device listed in Attachment A that is evidence of or identifies the user of the account or persons producing, possessing, receiving, distributing or producing child pornography or other violations of the crime under investigation;

19.     Information about the device listed in Attachment A that is evidence of or identifies the user of the account or persons involved in the crime under investigation;

20.     Records and information concerning communications between individuals about the crime under investigation or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography or that is evidence of the crime under investigation.

21.     Records and information concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members, and/or that advertise, promote, discuss or otherwise involve child pornography;

22.     Records and information concerning membership in online groups, clubs, or services that discuss or otherwise involving the crimes under investigation;

23.     Records and information related to the known associates, or any others associated with DEVICE listed in Attachment A, including biographical information, addresses, email addresses, user names, social security numbers, or other pertinent identifying information;

24.     Evidence indicating how and when DEVICE listed in Attachment A was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

25.     Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information or payment for gaming services);

26.     Evidence indicating the subscriber's state of mind as it relates to the crime under investigation;

27.     Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts;

28.     Records relating to who created, used, or communicated with the DEVICE listed in Attachment A or identifier, including records about their identities and whereabouts.

29.     Records, information, and items relating to violations of the statutes described above including:

        a.     Records, information, and items relating to the DEVICE;

        b.     Records, information, and items relating to the ownership or use of the DEVICE;

        c.     Records and information relating to the identity or location of the persons suspected of violating the statutes described above;

30.     As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data.

31.     The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

32.     The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

1.   As described above and in Attachment B, this warrant allows law enforcement to search for records that might be found on the DEVICE, in whatever form they are found. One form in which the records are likely to be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

2.   There is probable cause to believe those records referenced above will be stored On the DEVICE, for at least the following reasons:

a. Deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

b. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when

files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

      c.      Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

      d.    Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

3.  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on the DEVICE because:

      a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage

medium that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. Information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (*e.g.*, registry information, communications, images and movies, transactional information, records of session times and durations, Internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, computers typically contain information that logs: computer user account session times and durations, computer activity associated

with user accounts, electronic storage media that connected with the computer, and the IP address through which the computer accessed networks and the Internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (*e.g.*, a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (*e.g.*, Internet searches indicating criminal planning), or consciousness of guilt (*e.g.*, running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or

other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. When an individual uses a computer to obtain or access child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. A computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

4. Based upon my training and experience and information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be

stored on a variety of systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud" storage. A thorough onsite forensic examination of a DEVICE is not always possible for a number of reasons, including the following:

      a. Searching computer systems is a highly technical process that requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software, or operating system that is being searched;

      b. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

      c. The volume of data stored on many computer systems and storage devices

will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

d. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

6. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.